## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
## MANHATTAN COURTHOUSE

| | |
|---|---|
| Christie Quilez, individually and on behalf of all others similarly situated, | 1:23-cv-01889 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Mondelēz Global LLC, | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.     Mondelēz Global LLC ("Defendant") has manufactured and sold "Sugar Free Gum With Xylitol" under the Trident brand for at least the past ten years (the "Product").



## I.   REASONS FOR CHEWING GUM

2.   Archaeologists have confirmed that primitive man chewed gum by discovering tooth imprints in various pieces of birch bark tar.

3.   According to anthropologists, the reasons our ancient ancestors chewed gum are no different than why consumers do today.

4.   These include enjoying its taste, reducing anxiety, increasing focus, freshening breath, and having positive effects on overall oral health, such as cleaning and whitening teeth and inhibiting cavities and plaque.

5.   Compared to those who do not chew gum, gum chewers are significantly more likely to engage in positive oral health habits, such as using mouthwash, flossing and brushing their teeth on a regular basis.[1]

## II.   SUGAR FREE GUMS

6.   Over the past two decades, greater awareness about the harms of sugar, related to obesity and cavities, has resulted in a decline of traditional gum based on sucrose.

7.   However, the development of polyols or "sugar alcohols," carbohydrates distinct from sugars or alcohol, has filled the void of sucrose-based sweeteners.

8.   These low calorie ingredients include sorbitol, mannitol, xylitol, erythritol, maltitol, lactitol and isomalt.

9.   According to industry expert L. Wilson, "People are substituting sugarless [gum] [for those based on sucrose] because manufacturers have been adept at bringing flavorful sugarfree options."

10.   Wilson noted that "consumers are increasingly using sugarfree gum as part of dental-

---

[1] Sweet Insights.

health regimens," as these products in have "earned the American Dental Association ('ADA') Seal of Acceptance because it can prevent cavities by reducing plaque and strengthening teeth."

11.   Another confectionery executive pointed out that part of the appeal of gum was because "The FDA [Food and Drug Administration] allows sugarfree gum that contains commonly used sweeteners (sorbitol, maltitol and xylitol) to make a health claim such as 'may reduce the risk of tooth decay.'"

### III.   POLYOLS IN SUGAR FREE GUM

12.   The FDA allows gum based on polyols such as "xylitol, sorbitol, mannitol, maltitol, isomalt, lactitol [] and erythritol" to tell potential purchasers that their consumption in foods like chewing gum "may reduce the risk of" dental caries or tooth decay, because they "are significantly less cariogenic than dietary sugars and other fermentable carbohydrates." 21 CFR 101.80(c)(2)(ii)(A); 21 CFR 101.80(c)(2)(i)(B); 21 CFR 101.80(a)(4).

13.   These regulations are intended to promote "noncariogenic carbohydrate sweeteners" generally as a type of unique ingredient, that when used in certain applications like chewing gum, has beneficial effects on human health.[2]

14.   Though "[T]he most common polyols [used] in sugar-free chewing gum are xylitol, [] sorbitol, mannitol and maltitol," they are not equal in terms of their oral health benefits.[3]

15.   Numerous studies of chewing gum based on noncariogenic sweeteners have concluded that xylitol is the polyol of choice in sugar free chewing gum for a variety of reasons.

16.   The ADA's academic journal noted that while "sorbitol-sweetened gum had low carcinogenicity when it was chewed no more than three times per day[,] [X]ylitol-sweetened gum

---

[2] Noncariogenic is defined as not producing caries or tooth decay.
[3] Keukenmeester, R. S., et al. "Effects of sugar-free chewing gum sweetened with xylitol or maltitol on the development of gingivitis and plaque: a randomized clinical trial." International journal of dental hygiene 12.4 (2014): 238-244.

was noncariogenic in all of the protocols tested."[4]

17.   In reviewing the evidence about noncariogenic sweeteners, the FDA relied on a study which showed "[T]he xylitol group had 86 percent fewer caries (significant) compared to the sucrose [] and 76 percent fewer caries than the control [group]," while "[T]he sorbitol group experienced 48 and 14 percent fewer caries," confirming that the cariogenicity of sorbitol was greater than xylitol.[5]

18.   When it comes to plaque, the sticky film that coats teeth and contains bacteria, chewing gum containing only xylitol was more effective than those with xylitol and sorbitol.[6]

19.   In fact, gum based on sorbitol had higher levels of plaque including *streptococcus mutans* ("SM"), while gum based on xylitol caused a reduction in plaque and SM.

20.   This is because "[S]orbitol can be fermented to a small degree whereas xylitol is not fermented by most cariogenic bacteria."[7]

21.   As "xylitol and sorbitol have been thoroughly studied," the former "is actively protective against tooth decay through reductions in *S. mutans* and levels of lactic acid produced by these bacteria," while "[S]orbitol generally is [only] accepted to be noncariogenic."[8]

22.   Some scholars have suggested a "'pentitol-hexitol theory' in the prevention of caries," which "maintain[s] that pentitols (sugar alcohols with five hydroxyl groups, such as xylitol) may be cariologically more effective than hexitols (sugar alcohols with six hydroxyl

---

[4] Burt, Brian A. "The use of sorbitol-and xylitol-sweetened chewing gum in caries control." The Journal of the American Dental Association 137.2 (2006): 190-196.
[5] Shyu, K. W., & Hsu, M. Y. (1980). The cariogenicity of xylitol, mannitol, sorbitol, and sucrose. Proceedings of the National Science Council, Republic of China, 4, 21-26.
[6] Söderling, E., et al. "Effect of sorbitol, xylitol, and xylitol/sorbitol chewing gums on dental plaque." Caries Research 23.5 (1989): 378-384.
[7] Rafeek, Reisha, et al. "Xylitol and sorbitol effects on the microbiome of saliva and plaque." Journal of Oral Microbiology 11.1 (2019): 1536181.
[8] Ly, K. A., Milgrom, P., & Rothen, M. (2008). The potential of dental-protective chewing gum in oral health interventions. The Journal of the American Dental Association, 139(5), 553-563.

groups, such as sorbitol)."[9]

23.    Researchers were cautiously optimistic, "but [] present[ly] [] conclude[d] that xylitol exhibits dental health benefits which are superior to other polyols in all areas where polyols have been shown to have an effect," due in part to its "specific effects on oral flora and especially on certain strains of mutans streptococci."[10]

24.    The European Food Safety Authority ("EFSA"), which requires higher levels of proof for health claims than peer agencies in other countries, approved the claim that "A cause and effect relationship has been established between the consumption of chewing gum sweetened with 100% xylitol and a reduction of the risk of tooth decay in children."[11]

## IV.   XYLITOL IS NOT EXCLUSIVE, PREDOMINANT OR SIGNIFICANT SWEETENER

25.    Though the front label describes the Product as a "Sugar Free Gum With Xylitol," its predominant sweetener is sorbitol, the first ingredient, in order of predominance by weight.



**INGREDIENTS:** SORBITOL, GUM BASE, XYLITOL, GLYCERIN; LESS THAN 2% OF: ACESULFAME POTASSIUM, ASPARTAME, BHT (TO MAINTAIN FRESHNESS), CITRIC ACID, MANNITOL, NATURAL AND ARTIFICIAL FLAVOR, RED 40 LAKE, SOY LECITHIN, SUCRALOSE.

26.    Based on assessments of the composition of ingredients in formulations for sugar free chewing gum, considering the typical amount of gum base, primary and secondary polyols,

---

[9] Mäkinen, K. K., et al. "Conclusion and review of the Michigan Xylitol Programme (1986-1995) for the prevention of dental caries." International Dental Journal 46.1 (1996): 22-34.

[10] Maguire, A., and A. J. Rugg-Gunn. "Xylitol and caries prevention—is it a magic bullet?." British dental journal 194.8 (2003): 429-436.

[11] EFSA, "Xylitol chewing gum/pastilles and reduction of the risk of tooth decay-Scientific substantiation of a health claim related to xylitol chewing gum/pastilles and reduction the risk of tooth decay pursuant to Article 14 of Regulation (EC) No 1924/2006-Scientific Opinion of the Panel on Dietetic Products, Nutrition and Allergies." EFSA Journal 6.11 (2008): 852.

glycerin and other ingredients, the relative amount of xylitol is half as much as the sorbitol used.[12]

27.    When the amount of sorbitol is twice as much as xylitol, its superior relative benefits to oral health are practically extinguished.

28.    The Product lacks enough absolute and relative amounts of xylitol to deliver the oral health benefits this polyol is known for.

29.    Competitor sugar free chewing gums products do not even promote xylitol like Defendant does, yet they contain this polyol as their primary sweetening ingredient.

 

30.    Defendant promotes its use of xylitol because it correctly expects "calling out" this ingredient will make consumers think (1) xylitol is highly valued for various reasons and (2) the sweetening component will be predominantly or exclusively xylitol, or at the very least, that it will be present in a relatively significant amount.

31.    However, Defendant uses sorbitol because it is less expensive with a higher profit

---

[12] Formulation and Production of Chewing and Bubble Gum, D. Fritz.

margin than xylitol, which is more costly.[13]

Jurisdiction and Venue

32.    Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

33.    The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

34.    Plaintiff is a citizen of New York.

35.    Defendant is a limited liability company whose sole member is citizen of Virginia and New Jersey.

36.    The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

37.    The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here for several years, from grocery stores, drug stores, convenience stores, gas stations, big box stores, warehouse club stores, and online, in the States Plaintiff seeks to represent.

38.    Venue is in this District with assignment to the Manhattan Courthouse because a substantial part of the events or omissions giving rise to these claims occurred in New York County, including Plaintiff's purchase, reliance on the identified statements, consumption and/or use of the Product, experiences described here and subsequent awareness they were false and misleading.

---

[13] Difference Between Sorbitol and Xylitol.

Parties

39.    Plaintiff Christie Quilez is a citizen of New York, New York, New York County.

40.    Defendant Mondelēz Global LLC is a Delaware limited liability company with a principal place of business in East Hanover, New Jersey, Morris County.

41.    Defendant's sole member is Mondelēz International, Inc., a Virginia corporation with a principal place of business in New Jersey.

42.    Defendant is a leader in chewing gum products across a variety of brands.

43.    Plaintiff bought the Product from various stores of the type where people buy a pack of chewing gum, such as the drug stores and convenience stores near where she lives between March 2021 and the present.

44.    Plaintiff read and relied on the statement that the Product was a "Sugar Free Gum With Xylitol" to expect that the gum's sweetening component was predominantly or exclusively xylitol, or at the very least, that it was present in a relatively significant amount.

45.    Plaintiff expected that xylitol was a valued ingredient because it was highlighted on the front label.

46.    Plaintiff was unaware of other gum products besides Defendant which highlighted its use of xylitol, so reasonably expected it not only had a significant absolute and relative amount of xylitol but that it had more xylitol compared to other chewing gums.

47.    As a result of the false and misleading representations, the Product is sold at a price premium, approximately no less than $1.99 for 14 sticks in one pack, excluding tax and sales.

48.    Plaintiff expected the amount of xylitol was sufficient to provide the superior effects on oral health this polyol was known for, compared to other similar ingredients.

49.    Plaintiff bought the Product at or exceeding the above-referenced price.

50.     Plaintiff paid more for the Product than she would have had she known the above-referenced facts or would not have purchased it.

51.     The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

52.     Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, features, and/or components.

<u>Class Allegations</u>

53.     Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Arkansas, Montana, Wyoming, Utah, Idaho and Alaska who purchased the Product during the statutes of limitations for each cause of action alleged.

54.     Common questions of law or fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

55.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

56.     Plaintiff is an adequate representative because her interests do not conflict with other members.

57.     No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

58.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

59.     Plaintiff's counsel is competent and experienced in complex class action litigation

and intends to protect class members' interests adequately and fairly.

<u>New York General Business Law ("GBL")</u>
<u>§§ 349 and 350 (New York Class)</u>

60.    Plaintiff incorporates by reference all preceding paragraphs.

61.    Plaintiff expected xylitol was a valued ingredient because it was highlighted on the

front label, the Product was sweetened predominantly or exclusively with xylitol or at least that it

was present in a relatively significant amount.

62.    Plaintiff relied on Defendant's false and deceptive representations and omissions.

63.    Plaintiff would not have purchased the Product or paid as much if the true facts had

been known, suffering damages.

<u>State Consumer Fraud Acts</u>
<u>(Consumer Fraud Multi-State Class)</u>

64.    The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are

similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or

deceptive business practices in the conduct of commerce.

65.    The members of the Consumer Fraud Multi-State Class reserve their rights to assert

their consumer protection claims under the Consumer Fraud Acts of the States they represent

and/or the consumer protection statute invoked by Plaintiff.

66.    Defendant intended that members of the Consumer Fraud Multi-State Class would

rely upon its deceptive conduct, which they did, suffering damages.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability/Fitness for a Particular Purpose and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

67.    The Product was manufactured, labeled, and sold by Defendant and expressly and

impliedly warranted to Plaintiff that it was sweetened predominantly or exclusively with xylitol or

at least that it was present in a relatively significant amount.

68.    Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

69.    Defendant knew the product attributes that potential customers like Plaintiff were seeking such as sugar free chewing gum which contained superior ingredients like xylitol, known as the most valued sweetener in gum and developed its marketing and labeling to directly meet those needs and desires.

70.    The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it was sweetened predominantly or exclusively with xylitol or at least that it was present in a relatively significant amount.

71.    Defendant described the Product so Plaintiff and consumers believed it was sweetened predominantly or exclusively with xylitol or at least that it was present in a relatively significant amount, and that the relative and absolute amount of xylitol was sufficient to achieve the oral health benefits it was known for, which became part of the basis of the bargain that it would conform to its affirmations and promises.

72.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

73.    This duty is based on Defendant's outsized role in the market for this type of product, the globally trusted Trident brand.

74.    Plaintiff recently became aware of Defendant's breach of the Product's warranties.

75.    Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

76.     Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

77.     The Product did not conform to it affirmations of fact and promises due to Defendant's actions.

78.     The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it was sweetened predominantly or exclusively with xylitol or at least that it was present in a relatively significant amount.

79.     The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it was sweetened predominantly or exclusively with xylitol or at least that it was present in a relatively significant amount, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

<u>Fraud</u>

80.     Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it was sweetened predominantly or exclusively with xylitol or at least that it was present in a relatively significant amount.

81.     Defendant possesses studies showing xylitol is the most valued sugar alcohol sweetener in terms of what consumers look for and was aware that xylitol is superior to other polyols like sorbitol.

82.     The records Defendant is required to maintain, the information inconspicuously

disclosed to consumers, and its internal surveys, provided it with actual and constructive knowledge of the misleading implications of its claims.

Unjust Enrichment

83.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Certifying Plaintiff as representative and the undersigned as counsel for the classes;

2. Awarding monetary, statutory and/or punitive damages and interest;

3. Awarding costs and expenses, including reasonable attorney and expert fees; and

4. Other and further relief as the Court deems just and proper.

Dated:   March 6, 2023

                                        Respectfully submitted,

                                        /s/ Spencer Sheehan
                                        Sheehan & Associates, P.C.
                                        60 Cuttermill Rd Ste 412
                                        Great Neck NY 11021
                                        (516) 268-7080
                                        spencer@spencersheehan.com